# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
       **Plaintiff,**

  v.                                          **Case No. 09-CR-194**

**JOHN BOUMENOT**
       **Defendant.**

## SENTENCING MEMORANDUM

Defendant John Boumenot pleaded guilty to wire fraud, contrary to 18 U.S.C. § 1343, arising out of his participation in a mortgage fraud scheme. I ordered a pre-sentence report ("PSR") and set the case for sentencing.

In imposing sentence, the district court must first determine the advisory guideline range, then select the ultimate sentence on consideration of all of the factors set forth in 18 U.S.C. § 3553(a). See, e.g., United States v. Bush, 523 F.3d 727, 729 (7th Cir. 2008). In this case, defendant's PSR recommended a base offense level of 7, U.S.S.G. § 2B1.1(a)(1), a 12 level enhancement based on a loss amount of $200,000-400,000, § 2B1.1(b)(1)(G), and a 3 level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1, for a final offense level of 16. Coupled with defendant's criminal history category of I, level 16 produced an imprisonment range of 21-27 months. Neither side objected to these calculations, which I found correct and adopted accordingly.

The government argued for a prison sentence at the low end of the guideline range, while defendant requested a probationary term. Upon consideration of all of the § 3553(a) factors, I found a sentence served in the community appropriate. This memorandum sets forth

the reasons.

## I. SENTENCING FACTORS

In imposing sentence, the court must consider:

(1)  the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)  the need for the sentence imposed–

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3)  the kinds of sentences available;

(4)  the advisory guideline range;

(5)  any pertinent policy statements issued by the Sentencing Commission;

(6)  the need to avoid unwarranted sentence disparities; and

(7)  the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

The court must, after considering these factors, impose a sentence that is sufficient but not greater than necessary to satisfy the purposes of sentencing – punishment, deterrence, protection of the public, and rehabilitation and treatment of the defendant, as set forth in § 3553(a)(2). In determining a sufficient sentence, the district court may not presume that the guideline sentence is the correct one, Rita v. United States, 551 U.S. 338, 351 2465 (2007), or place "any thumb on the scale" favoring a guideline sentence, United States v.

Sachsenmaier, 491 F.3d 680, 685 (7th Cir. 2007). Rather, the court must make an independent determination, taking into account the types of sentences available, the other relevant § 3553(a) factors and the arguments of the parties. See Gall v. United States, 552 U.S. 38, 49-50 (2007).

## II. DISCUSSION

### A. The Offense

Defendant operated a business buying, renting and selling real estate properties. As a property owner, he took part in a mortgage fraud scheme devised and executed by a mortgage broker named James Lytle. The scheme involved the sale of properties, at prices desired by the sellers, to straw buyers whose loan application information Lytle fabricated. After the loans closed, the sellers paid Lytle kick-backs. Lytle and his partner, Martin Valadez, were both prosecuted in this district and sentenced to lengthy prison terms.

This defendant participated in the scheme related to the sale of three properties he owned in Delavan and Elkhorn, Wisconsin, involving loans totaling $805,000. The losses to the lenders, based on the difference between the loan and resale amounts, was about $386,000, according to the government. Defendant attended the closings on these properties and netted a total of $228,982.33 from the sales. He then kicked back three checks totaling $41,000 to Lytle. He later sent Lytle a fourth check for $89,246.89. Lytle stated that these checks represented his payment for orchestrating the three fraudulent sales.

No payments were made on the loans, which went into default. Lytle subsequently flipped one of the properties to another straw buyer, but that loan apparently went bad too. The PSR, in ¶¶ 20-28, set forth the losses associated with these loans.

3

In his version to the PSR writer, defendant stated that he was deeply involved in his parents' health issues at the time and anxious to sell his remaining Wisconsin properties, which caused him to become involved with Lytle. He also stated that he was drinking heavily at the time. Defendant believed the loss to be $219,500, but for purposes of the guidelines the difference between his figure and the government's was immaterial.

**B.    The Defendant**

At age sixty-three, defendant had no prior criminal record. His family members and long-time companion made positive statements about him to the PSR writer, describing his giving and supportive nature. The court also received numerous letters from friends and business associates, indicating that defendant helped unemployed men find jobs; assisted a public housing authority find homes for special needs clients and served on an affordable housing committee; assisted in the redevelopment of the then-depressed Wicker Park neighborhood in Chicago; donated and helped raise funds to revitalize Sharon, Wisconsin and other towns in this state; generously contributed to charities, including the Red Cross; and generally dealt honestly with others.

The PSR and the defense submission also discussed an array of serious health issues. Just a partial list of defendant's conditions included hypertension, diabetes with retinopathy, pancreatic cysts, chronic low back pain, renal insufficiency and obstructive sleep apnea. He received treatment from a neurologist for vertigo and took a variety of medications, listed in ¶ 70 of the PSR. The PSR and medical documentation further described a recent surgery for chronic mastoiditis, with left conductive hearing loss, based on a congenital defect in the cranium. The doctor described this condition as a "hernia of brain and meninges into the mastoid bone." Defendant regularly saw another neurologist for his chronic back pain, and

4

testing revealed severe nerve damage in his legs. He also received monthly check-ups related to gastric banding surgery he underwent in 2007. Finally, he recently underwent shoulder surgery, for which he continued in physical therapy.

At the time of sentencing, defendant received social security disability benefits, with previous work experience in real estate and construction. He stopped drinking several years before sentencing, and the record contained no indication of further substance abuse.

**C.    The Sentence**

The guidelines called for a term of 21-27 months, but I found a sentence served in the community sufficient to satisfy the purposes of sentencing in this case. First, while mortgage fraud is certainly a serious crime, this was primarily Lytle's scheme. He and Valadez arranged the transactions, falsified the loan application information and recruited the straw buyers. It appeared that defendant became involved because he was anxious to unload these three properties, not due to greed. He profited modestly and kicked-back much of that to Lytle. The many letters from business associates attesting to defendant's honesty and fair dealing lent support to the conclusion that these transactions with Lytle represented an aberration. Therefore, a sentence served in the community sufficed to provide just punishment given defendant's specific conduct and motivation.

Second, a community-based sentence sufficed to protect the public. Given his age, health problems and lack of any prior record, there was no need for prison to satisfy this purpose. Similarly, a lengthy sentence of probation, with monitoring of his financial dealings, sufficed to deter defendant from repeating his crime.

Third, given defendant's serious medical conditions, discussed above, which restricted his mobility and required consistent treatment from a variety of specialists (his primary doctor

5

called them "super" sub-specialists), such a sentence best satisfied defendant's correctional needs, without burdening the Bureau of Prisons in treating his many medical problems.[1] The Sentencing Commission has acknowledged that in such situations home detention may be as efficient and less costly than prison. See U.S.S.G. § 5H1.4.

Finally, a sentence served in the community best satisfied the need to provide restitution to the victims of the offense, which I had to consider under § 3553(a)(7). See United States v. Peterson, 363 F. Supp. 2d 1060, 1062-63 (E.D. Wis. 2005) (imposing below-guideline sentence in part to facilitate payment of restitution). This sentence varied from the guidelines, but because it was supported by the particular and unusual facts of the case, discussed herein, it created no unwarranted disparity. See United States v. McGee, 479 F. Supp. 2d 910, 913 (E.D. Wis. 2007) (stating that disparity between sentences is "unwarranted only if the judge fails to provide sufficient reasons for the difference, grounded in the § 3553(a) factors").

### III. CONCLUSION

Therefore, I placed defendant on probation for a period of five years. I selected the maximum term to ensure financial monitoring and payment of restitution. As special conditions, I ordered defendant to make regular restitution payments; not to hold employment having fiduciary responsibilities during the supervision term without first notifying the employer of his conviction, or to hold self-employment having fiduciary responsibilities without consent of the supervising probation officer; not to open new lines of credit or use existing credit resources without the prior approval of the supervising probation officer; to provide access to all financial

---

[1] Defendant's primary physician indicated that optimal care "require[d] regular office visits with multiple specialists which can often be several appointments in any given week, multiple follow up radiology studies on a regular basis and regular ongoing physical and vestibular rehab therapy."

6

information requested by the supervising probation and to submit monthly financial reports; not to convey any asset with a fair market value in excess of $500 without the approval of the supervising probation officer until all financial obligations imposed by the court were satisfied; and, finally, to serve 180 days of home confinement. Other terms and conditions of the sentence appear in the judgment.

Dated at Milwaukee, Wisconsin, this 8th day of January, 2010.

/s Lynn Adelman

_____
LYNN ADELMAN
District Judge